McKinney, J.,
delivered the opinion of the Court.
This bill was filed on the 27th of Septemb'r, 1858, for an account and final settlement of a partnership, which had previously existed between the complainant and defendant.
After the cause had been pending for some time, namely, on the 10th of February, 1860, the parties, through the intervention of mutual friends, made an adjustment between themselves, which was reduced to writing, signed and sealed by them respectively: the terms of which, by the agreement, were to be made the decree of the Court in the pending suit.
From the face of the paper, the adjustment was a “compromise of all the matters now in dispute between the parties.'”
By the terms of the instrument of “ compromise,” Winfrey was to pay Woodward all the money that the latter had paid out for the firm since the filing of the bill, which amounted to $1,219.29, and the additional sum, with interest, of $570.17. Woodward, on his part, agreed to “relinquish to said Winfrey all his right, title, claim and interest in and to the books, notes, and all assets belonging to the firm.” And in consideration thereof, Winfrey agreed “ to pay all the outstanding debts against said firm, and release Woodward from all liability as a partner in the firm.”
*480 It was further agreed, that Woodward should dismiss his bill, and Winfrey pay the cost.
At the time of this “compromise,” Woodward’s individual account due to the firm, stood unsettled on the books, amounting to about the sum of $-.
At the ensuing term of the Court, when the instrument of “ compromise” was offered as the basis of the decree to be made in the cause, a disagreement sprang up between the parties, as to whether the individual account of Woodward, above mentioned, was extinguished by the adjustment made between the parties, before referred to; or, whether it remained an existing liability, and passed to Winfrey, under and by force of Woodward’s relinquishment “of all his right, title, claim and interest in and to the books, notes, and all assets belonging to the firm.”
Upon this point, proof was taken on the part of Woodward, which establishes, beyond all doubt, that it was the distinct agreement and understanding of both parties, throughout the whole negotiation, and at the time the instrument, setting forth the terms of adjustment, was executed by them, that the debt of Woodward to the firm was settled and extinguished, and was not to pass under the transfer to Winfrey.
The Chancellor rejected the proof, on the ground that it was contradictory of the proper and legal import of the written instrument executed by the parties.
We are unable to concur with the Chancellor, in regard to the construction of the written instrument.
Its true legal import, as it seems to us, is the reverse of that assumed in the decree.
The object of the bill, was a full and final settlement of all the partnership matters.
*481 The instrument, upon its face, purports to be a “com* promise of all the matters now (then) in dispute between the parties.” The paper must, therefore, be taken as at least, prima fade evidence, that the results therein stated, were the final results of the ascertained rights of the respective partners, based upon a calculation, or estimate, comprehending all matters connected with, or arising out of, the whole partnership business, as well between the partners themselves, as between the firm, and third persons.
Such, we think, is the plain import of the written instrument; and such, also, is the presumption of law.
It cannot be supposed, that, in an adjustment professing to be a full and final one, and so intended to be, by both parties, and brought about with so much pains and labor, that so large and important an item would have been overlooked; and still less can it be supposed, that Winfrey would have agreed to pay Woodward the sum of nearly $1,800, and let a decree be rendered against him for it, without claiming an abatement of that amount, to tlxo extent of Woodward’s account, if it had been understood to have been transferred to Mm, and without once requiring any explicit evidence whatever, of such a claim on Woodward. This is not to be believed.
In this view, the case may be disposed of, without noticing the question, whether or not, the Chancellor erred in rejecting the proof offered ; and we pass that question by.
Decree reversed.